George Alschuler and Joe Nadon, Appellants, v. Rockford Bolt and Steel Company, Appellee.

Gen. No. 9,868.

Opinion filed April 28, 1943.

WILBUR E. JOHNSON, of Rockford, for appellants.

Miller, Thomas & Hickey, of Rockford, for appellee; L. C. Miller and Francis E. Hickey, both of Rockford, of counsel.

Mr. Justice Wolfe delivered the opinion of the court.

Plaintiffs appellants instituted the present action in the circuit court of Winnebago county, Illinois, for damages because of the alleged negligent construction of certain scaffold equipment. There were originally two parties defendant, the first being one George Sloan, who died during the pendency of the litigation in the trial court. Sloan left no estate subject to administration, so there was no substitution of his personal representatives and the action was dismissed as to him. The other defendant is the present appellee, Rockford Bolt and Steel Company, a corporation.

An original complaint was filed joining both defendants. Upon motion to strike filed by both defendants, the court entered an order sustaining the motion and granted plaintiffs leave to file an amended complaint. A first amended complaint was thereafter filed against the corporate defendant, to which first amended complaint the defendant appellee filed a motion to strike, which was granted and leave was given the plaintiff to file a second amended complaint.

The second amended complaint consists of eight counts. The first four counts pertaining to the construction of the entire scaffold equipment, and the last four counts dealt only with the construction of the scaffold hooks, hereinafter described at greater length. The first count alleges that on May 6, 1939, the plaintiff appellant, George Alschuler, was a plastering and lathing contractor employed in the construction of certain buildings at the Michigan Children's Village at Coldwater, Michigan; that he sublet that portion of his contract dealing with lathing to the plaintiff appellant, Joe Nadon; that Alschuler furnished the scaffold

materials; that Nadon employed one John K. Whitman as a lather and laborer; that all these parties were operating under the Workmen's Compensation Law of the State of Michigan, which law was pleaded at length in an exhibit attached to the complaint.

The fifth paragraph of said complaint is as follows: "5. That, on the 6th day of May, 1939, the said John K. Whitman, known as Jack Whitman, was engaged as a lather and laborer at a plastering and lathing job of the plaintiffs on a certain building at the project at Michigan Children's Village, at Coldwater, Michigan, and while so engaged was in the exercise of ordinary care and caution for his own safety."

The complaint further alleges that the original defendant, Sloan, had invented and was selling to the general public for use in various forms of building construction, certain scaffold equipment consisting of a steel base in the shape of a disc, which was placed upon the ground with the concave surface downward; that there was inserted in the steel disc, in a vertical position, a metal pipe, in which, holes were drilled at varying lengths; that scaffold hooks made of bar steel, were inserted in such holes at varying heights, and at the other end of such hooks was laid a plank for scaffold purposes; that the scaffold was set at varying heights by moving the hooks from one hole in the upright metal supports to another hole at varying elevations; that the corporate defendant manufactured such equipment, consisting of bases, upright supports and hooks, and knew that such scaffold equipment was to be used in building construction, to support the weight of one or more men while put to such use; that they were shipped direct by the defendant from time to time to customers of George Sloan for the specific purpose, known to the defendant, of being used to support scaffolds for such purposes; that prior to February 15, 1939, the said George Sloan ordered from the defendant certain scaffold equipment, con-

sisting of such metal bases, upright metal supports and metal hooks or brackets, and that such equipment was shipped by the defendant to the Briggs Company of Lansing, Michigan, and that the plaintiff, George Alschuler, purchased such equipment from the Briggs Company.

The first count thereafter alleges specific negligence against the defendant in this; that such scaffold hooks were bent while cold and not in a heated condition, and that bending hooks in such manner constituted negligence which was the direct and proximate cause of the injury, for which recovery is sought; that as a direct and proximate cause of the manufacture of such hooks by bending such material and forming the same while cold, on May 6, 1939, while the employee, Whitman, was working on a scaffold supported by such hooks, the hooks did break and Whitman fell, straddling one of the upright iron bars, resulting in severe injuries, etc.; that such injuries were injuries arising out of and suffered in the course of his employment, as defined by the Workmen's Compensation Laws of the State of Michigan; that under such law, an award was granted to said Whitman against the plaintiffs, and that there was paid, under the supervision of the Department of Labor and Industry of the State of Michigan, a lump settlement award of one thousand ($1,000) dollars, which, together with other sums paid for the injuries and disability of Whitman, total the sum of twenty-seven hundred and thirty and 70/100 ($2,-730.70) dollars, and that under the subrogation provisions of the Michigan Statute, the plaintiffs became subrogated to all rights of settlement, as a result of which the defendant has become liable to plaintiff for the damages in question.

The second count realleges all elements of the first count except the specific form of negligence in the bending and forming of the scaffold hooks in question.

The third count realleges all of the paragraphs of

the first count except that as to the specific negligence, and charges the defendant with forming such scaffold hooks from steel too light in weight and strength for the purposes for which the hooks were made.

The fourth count charges as special negligence that the hooks in question were shaped and bent at such an angle that they projected out from the upright metal pipe and did not rest against the body of such pipe, with the result that a great strain was placed upon such hooks where said hooks were bent to be inserted in the holes in the upright pipe, and that if such hooks had been shaped so that they would rest against the pipe, they would have received greater support therefrom. Counts 5, 6, 7 and 8 correspond with counts 1, 2, 3, and 4 serially, except that they are restricted to the manufacture by the corporate defendant of the hooks alone, and the specific negligence charged in count 5 corresponds with the specific negligence charged in count 1, and the negligence charged in count 6 corresponds with the negligence charged in count 2, etc.

The motion of defendant to strike the complaint is as follows: "Now comes Rockford Bolt and Steel Company, an Illinois Corporation, by its attorneys, Miller and Thomas, and moves the court to strike the plaintiffs' second amended complaint at law filed herein, and as grounds for said motion says:

1. That the second amended complaint of the plaintiffs is substantially lacking in any allegation of fact which shows a liability on the part of the defendant.

2. That the second amended complaint is substantially lacking in any allegation of fact showing negligence on the part of the defendant.

3. That the second amended complaint is substantially lacking in any allegation of fact showing that the plaintiffs have suffered any injury or damage as a proximate result of any negligence on the part of the defendant.

4. That the allegations of the second amended complaint fail to show that the defendant owed any duty to the plaintiffs in the manufacture of scaffold hooks claimed to have been manufactured by this defendant.

5. That the allegations of the second amended complaint fail to show any contractual relationship between the defendant and the plaintiffs.

6. That the second amended complaint shows on its face that the defendant owed no duty to the plaintiffs.''

The court sustained a motion to strike this final amended complaint and plaintiffs elected to stand by their complaint, whereupon judgment was entered in favor of defendant and against plaintiffs, from which judgment this appeal is taken.

The appellants, in their printed arguments, attack the appellee's motion to strike on the theory that the appellee has challenged the sufficiency of their complaint on the single ground that the amended complaint did not show a privity of contract between the injured party, and the Rockford Bolt & Steel Company. The appellee claims that there are five other reasons mentioned in its motion why the appellants' complaint is not good and has argued each of them.

It is insisted that the appellants cannot sustain their suit, because the plaintiffs' cause of action is based on an alleged, statutory assignment of a cause of action, which is in violation of the public policy of the State of Illinois. We cannot agree with the appellee on this contention. We think the suit was properly brought in the circuit court of Winnebago county—*Stix, Baer & Fuller Co. v. Woesthaus Motor Co., Inc.,* 284 Ill. App. 301.

Paragraph 5 of the complaint states, that the injured party, Whitman, was employed as a lather and laborer and while so employed was in the exercise of ordinary care and caution for his own safety. The appellee challenged this statement, as not being a suf-

ficient allegation that the injured party was in the exercise of due and ordinary care and caution for his own safety, as required by the law of this State. This court had occasion to pass upon a similar question in the case of *Munsen v. Illinois Northern Utilities Co.*, 258 Ill. App. 438, and we there held that in an action by an employer against a third party to recover an amount paid an employee under the Workmen's Compensation Act, for injuries sustained by the alleged negligence of a third party, the burden of proof rests upon the plaintiff to show affirmatively that the third party was negligent as charged, and that such negligence was the proximate cause of the injury, and that the employee was in the exercise of ordinary care for his own safety just prior to and at the time of the injury. The allegation of this complaint does not state that just prior to, and at the time of the injury, Whitman was in the exercise of due and ordinary care for his own safety. The complaint was defective in not so alleging.

The main point relied upon by the appellee, to sustain the ruling of the court on their motion, is that the manufacturer of an article is not liable to a third party who had no contractual relation directly, or indirectly with the manufacturer, unless the article was inherently dangerous to life or property. The appellants admit this to be the usual rule, but they contend there are exceptions to this rule which apply to the present case. They cite numerous cases as sustaining their contention. The case of *Devlin v. Smith,* 89 N. Y. 470, is one which is relied upon by the appellants. The facts in that case were different from the facts in the present case. In the *Devlin* case there was a contract to build a complete scaffold for painters, and the painters' employees were injured, as a result of the scaffold breaking. The court held that owing to negligent construction of the particular scaffold, it was eminently dangerous. In the present case, the only

thing that the Rockford Bolt & Steel Company did was to make some parts for Sloan, who was the inventor of the scaffold, who in turn sold it to the Briggs Company at Lansing, Michigan, who in turn sold it to George Alschuler, and Alschuler furnished the scaffold to a subcontractor, Nadon, and Whitman, while in the employ of Nadon, was injured.

In *Colbert v. Holland Furnace Co.*, 333 Ill. 78. The Holland Furnace Company manufactured a defective grating to be installed in a residence building, and a tenant in the residence stepped on it and was injured. On the question of faulty construction of the grating, the court held that the manufacturer of the defective article was liable.

In *Lill v. Murphy Door Bed Co. of Chicago*, 290 Ill. App. 328, two young ladies had rented a room in an apartment house where a defective bed had been installed, and the young ladies in question, were using the bed in an ordinary and careful manner and one of them was injured. She sued the manufacturer of the defective bed for her injuries. The court held in this case that the bed company became liable because they in their printed advertisements, stated that they were the manufacturers of the bed, and guaranteed them to be safe.

In the case of *Davidson v. Montgomery Ward & Co.*, 171 Ill. App. 355, the Montgomery Ward Company had advertised circular saw frames for sale, which they stated were well built and thoroughly tested, and perfectly safe for use. In the operation of the saw frame, the flywheel on the same exploded and severely injured the person working at the saw. The court held under the circumstances that Montgomery Ward & Company, having advertised in their catalogue a safe and thorough construction of the saw frame and flywheel, were liable to the third person who was injured from the defects in the flywheel and a judgment was sustained against them.

None of the cases cited by the appellee seem to be in point with the facts in the present case, in litigation. There are factors in the present case that are wholly lacking in the cases cited by the appellants. The case of *Shepard v. Kensington Steel Co.*, 262. Ill. App. 117, is more nearly in point than any other that has been called to our attention. In that case Minnie Shepard sued the Ford Motor Company, Ben T. Wright Inc., and the Kensington Steel Company, to recover damages for injuries sustained because of the alleged negligence of the defendants. The Kensington Steel Company had purchased a Ford truck from Ben T. Wright Inc., which had been manufactured by the Ford Motor Company. On the day that the truck was purchased, an employee of the Kensington Steel Company was driving the same on a public street in the City of Chicago, when one of the rear wheels of the truck came off and rolled down the street and struck and injured Minnie Shepard. The trial court dismissed the suit as to the Ford Motor Company, on the theory that there was no privity of contract between the defendant and the plaintiff, Minnie Shepard. A judgment was procured against the Kensington Steel Company and Ben T. Wright Inc. The case was appealed to the Appellate Court, and the court, in discussing the case as to the rule in such cases says: ''The general rule is that a contractor, manufacturer, vendor, or furnisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of such article.'' (Cooley on Torts, vol. 2, 3rd ed., page 1486.) The court sustained the judgment against the Kensington Steel Company, the purchaser of the Ford truck, but reversed as to Ben T. Wright Inc., for the reason there was no privity of contract between that company and the plaintiff. One of the justices in that division of the Appellate Court filed a dissenting opinion in which he stated that he thought that the judg-

ment also should have been sustained as to Ben T. Wright Inc., but the entire court was of the opinion that there was no liability on the part of the Ford Motor Company, who manufactured the truck in question.

We think the law, as announced in that case, is very applicable to the facts in the present case. We find that the manufacturer, the Rockford Bolt & Steel Company, who manufactured the alleged defective parts of the scaffold, and the employee of the plaintiff who was injured by using the scaffold, had no privity of contract between them by which a suit for injuries could be maintained. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*